Mark Kleeden v. Commissioner.
Kleeden v. Commissioner
Docket No. 1715.
United States Tax Court
1944 Tax Ct. Memo LEXIS 70; 3 T.C.M. (CCH) 1122; T.C.M. (RIA) 44345; October 25, 1944
*70 A. E. Hill, Esq., 534 Commerce Exchange Bldg., Oklahoma City, Okla., for the petitioner. E. G. Sievers, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: Respondent has determined an income tax deficiency against petitioner in the amount of $1,668.25 for the taxable year 1939. The question presented is whether petitioner realized taxable income in the amount of $10,000 when his obligation on certain personal notes in the aggregate face amount of $15,000, plus interest, was discharged, pursuant to an agreement under which certain suits that had been instituted against him were settled and dismissed with prejudice upon the payment by a corporation of which petitioner was president and the largest single shareholder of $2,500 in cash and the execution of its own corporate notes, endorsed by petitioner, in the aggregate face amount of $7,500. Findings of Fact Petitioner is a resident of Oklahoma City, Oklahoma, and is president and general manager of the Black Gold Petroleum Company, an Arizona corporation doing business in Oklahoma. He made his income tax return for 1939 on the cash basis and filed it with the Collector of Internal Revenue for *71 the District of Oklahoma. In 1929 he lived in Texas and was in the oil business. On June 10, 1929, he executed his note for $11,000 in favor of D. Oberholz, payable within 90 days and bearing interest at the rate of 8 percent per annum after maturity until paid. As security for payment of the note, petitioner gave Oberholtz a chattel mortgage on certain property. The mortgage was dated June 6, 1929, signed June 10, 1929, and filed July 16, 1930, in the chattel mortgage records, Jasper County, Texas. Included in the mortgaged property were certain oil well equipment, 5,000 barrels of oil in storage and all additional oil produced from a certain lease. It was provided that the oil in storage and the oil to be produced could be sold provided the checks for payment thereof were made jointly tooberholz and petitioner until the $11,000 was paid. On June 15, 1929, petitioner executed and delivered another note to D. Oberholz in the amount of $4,000 payable within one year bearing interest at the rate of 10 percent per annum from date until paid. Shortly thereafter, in 1929, petitioner moved to Oklahoma. On or about June 1, 1931, Oberholz died. On July 12, 1933, Peter Bos, administrator *72 of the estate of Oberholz, deceased, filed a suit in the District County Court, State of Oklahoma, No. 81,051, against petitioner and others, including the Black Gold Petroleum Company to collect the $11,000 note and the interest thereon. On July 17, 1933, an amended petition was filed. It was alleged first that no part of the principal or interest had been paid. It was further alleged that the oil and other property covered by the chattel mortgage had been disposed of in violation of the terms of the mortgage, that the money borrowed from Oberholz and the proceeds received by petitioner from the sale of the mortgaged property went into the business of petitioner and an associate, that the relation between petitioner and his associate were concealed from Oberholz, that they conspired to defraud Oberholz of his money, that the Black Gold Petroleum Company eventually had received a portion of the original consideration for the note or some of the property pledged as collateral for payment thereof, and that the company was liable to the holders of the note because of a resulting trust. Petitioner and the other defendants filed separate answers on August 29, 1938. Petitioner admitted *73 executing the note for $11,000 but alleged that a usurious rate of interest had been charged. He specifically denied the allegations with respect to the property covered by the mortgage and the claims as to the use of the borrowed money. The other defendants in their answer also specifically denied the allegations. On June 14, 1934, the administrator of the Oberholz estate also filed a suit, No. 83,992, against petitioner to enforce collection of the $4,000 note, plus interest, alleging that no part of the principal or interest had been paid. Petitioner filed his answer July 31, 1934, in which he admitted executing the note but alleged that a usurious rate of interest had been charged. In 1939 the heirs of the Oberholz estate and their attorneys went to Oklahoma City in the interest of the suits that had been filed. Henry Oberholz and Johanna Oberholz Roberts, the heirs, were substituted as plaintiffs in the suits. M. W. McKenzie, attorney for Black Gold Petroleum Company, after talking with the attorneys for the heirs and getting all the facts he could from petitioner and the secretary of the company, held a conference with the attorneys looking to a settlement. He thought that if *74 it could be proved that the borrowed money and the proceeds from the mortgaged property could be traced into the properties of the company, a lien might be obtained upon an operating oil well of the company. On October 13, 1939, he submitted a proposal of settlement to the heirs and their attorneys. The proposal provided that the Black Gold Petroleum Company would pay to the heirs the total sum of $10,000, $2,500 in cash and three separate promissory notes executed by the company in the sum of $2,500 of even date of the letter, each bearing interest at 6 percent per annum and payable in one, two and three years after date, respectively. In return the heirs would sign a dismissal with prejudice of the two suits filed in Oklahoma and of another suit on the two notes which had been filed in Texas against petitioner. It further provided that the proposal be submitted to the board of directors at a special meeting and that petitioner and secretary of the company would endeavor to have it approved by the board. An escrow arrangement was provided for and it was understood that if the settlement was consummated the petitioner would personally endorse and guarantee the payment of each of *75 the notes. Petitioner was also to pay the costs in each of the Oklahoma suits while the heirs were to pay the costs of the action filed in Texas. At the foot of the proposal appear the signatures of acceptances of the heirs and their attorneys and of petitioner. On October 20. 1939, a Waiver of Notice and Call of a Special Meeting of the Board of Directors of Black Gold Petroleum Company for the purpose of considering the proposed settlement was signed by the five directors of the company, and on October 26, 1939, the five directors held a special meeting in Oklahoma City, Oklahoma, considered and adopted the proposal and authorized the president to carry out the provisions of the agreement. Because of the absence of McKenzie from the city, there was a delay in carrying out the terms of the agreement. The Black Gold Petroleum Company made the $2,500 cash payment to the parties on December 12, 1939, in two checks, one of $500 and the other of $2,000, and on the same date delivered to them its three corporate notes of $2,500 each, dated October 26, 1939, payable one, two and three years from date, and endorsed by petitioner as an individual, in accordance with the terms of the agreement. *76 The suits in Oklahoma and Texas were dismissed with prejudice. Payments were made by the corporation on the first note as follows: November 18, 1940
$1,250.00
January 20, 1941
625.00
March 20, 1941
625.00 On February 19, 1941, a payment of $500 was made which was applied on the second note as follows: Interest to October 26, 1941
$ 300.00
Interest to February 19, 1942,
at 10 percent on $2,800
87.89
Applied on the principal
112.11
Balance of principal due
$2,387.89
In 1943 the heirs and their attorneys brought suit against the company and petitioner to enforce payment of the balance, plus interest due, on the second and third corporate notes. Petitioner negotiated with the parties and the suit was settled by a cash payment of $2,500 which payment was made by the Black Gold Petroleum Company. The Black Gold Petroleum Company, in 1939, had 1,087,494 1/2 shares of capital stock, $1 par value, outstanding. Petitioner owned the largest block of stock, 179,326 1//2 shares. The other four directors owned stock as follows: James K. Gaylord
1,597 1/4 shares
W. C. Noll
5,010 shares
C. E. Beck
6,665 1/4 shares
Milo R. Meredith
16,255 3/4 shares During 1939 *77 there were about 2,200 stockholders scattered throughout the United States. Petitioner became president of the company in 1936 and was its active manager. After the company had made the settlement, it set up on its books a notes payable account, showing a liability of $10,000. It charged the account with the cash payment of $2,500 and the other payments as they were made on the notes. In 1939 the company also charged the $10,000 to its profit and loss account and treated the amount as an expense in its income tax return for that year. However, the amount was disallowed as such by the Bureau of Internal Revenue. No entry was set up on the books charging petitioner with any part of the liability with respect to the settlement. The following is a summary of the assets and liabilities of the Black Gold Petroleum Company for the year 1939: BLACK GOLD PETROLEUM COMPANY OKLAHOMA CITY, OKLAHOMA Comparative Balance Sheets Assets
Dec. 31, 1938
Dec. 31, 1939
Accounts Receivable
$ 50,073.10
$ 95,244.71
Oil Leases
610,593.48
448,506.95
Machinery & Equipment
523,954.06
283,313.43
Stocking Subsidiaries
54,500.00
54,500.00
Notes Receivable
36,306.65
36,306.65
Bank and Cash
3,176.99
284.49
Deferred Expenses
3,617.60
180.82
Warehouse
50,508.03
28,781.02
Special Deposits
2,202.79
760.24
Undeveloped Leaseholds
36,218.15
40,235.67
Total Assets
$1,371,150.85
$988,113.98
Liabilities
Notes Payable
$ 247,739.75
$118,338.45
Accounts Payable
19,136.43
27,129.95
Surplus
272,129.79
110,455.03
Reserve for Depletion
337,167.27
323,498.63
Reserve for Depreciation
244,689.92
166,009.85
Capital Stock
237,354.37
233,666.89
Federal Taxes
1,489.15
1,515.18
Reserve Disputed Taxes
11,444.17
Deferred Settlement
7,500.00
Total Liabilities
$1,371,150.85
$988,113.98
*78 Respondent, in his determination of deficiency, added as taxable income to petitioner the $10,000 paid and to be paid by Black Gold Petroleum Company in settlement of the above suits brought by the Oberholz estate on the promissory notes of petitioner. Opinion The question here is whether the petitioner realized income in 1939 in the amount of $10,000, which amount represented the payments made and to be made by Black Gold Petroleum Company, and accepted by the Oberholz estate as full satisfaction of the estate's claim against the petitioner on his two promissory notes, in the principal amounts of $11,000 and $4,000. The respondent has made no determination or claim with respect to the remaining $5,000 of principal of the two notes and that amount is not here involved. Of the $10,000 in question, $2,500 was paid in cash by Black Gold Petroleum Company in 1939, the taxable year, while the remainder, evidenced by notes, was to be paid at the rate of $2,500 in each of the three succeeding years. As a condition to the settlement, however, the Oberholz estate specified that the petitioner must personally endorse the notes evidencing the $7,500 yet to be paid. It thus appears that *79 without payment or cost to him petitioner was relieved of any obligation on his part to repay $7,500 of the $15,000 which he had previously borrowed from Oberholz, the $5,000 not here in issue being canceled by the estate as a part of the settlement and $2,500 being paid in cash by the Black Gold Petroleum Company. The facts further show that the petitioner was president and the largest single stockholder of the Black Gold Petroleum Company, and there is no showing or claim that he was to be indebted to that company by reason of the said $2,500 payment. Further, there is no contention or showing that the Black Gold Petroleum Company did not have earnings from which a distribution or payment of $2,500 could be made to or for the benefit of its stockholders. We accordingly conclude and hold that by reason of the $2,500 payment the petitioner received in 1939 taxable income in that amount, which income was in character a dividend from the Black Gold Petroleum Company. With respect to the remaining $7,500, however, there was no payment and the heirs of the Oberholz estate had made it a condition to the 1939 settlement that the petitioner remain liable as personal endorser of the notes *80 of the Black Gold Petroleum Company for that amount, which notes were not due until in later years. The petitioner was to be completely relieved from liability with respect to the $7,500 only when the notes had been paid. There was no such payment in 1939, and it may not be said therefore that the petitioner received income in respect thereto in the taxable year. , and , cited and relied on by the petitioner, are distinguishable both as to parties and facts. Decision will be entered under Rule 50.